UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DE LAGE LANDEN FINANCIAL
SERVICES, INC.

CIVIL ACTION

VERSUS

NO. 09-990-JJB-SCR

PERKINS ROWE ASSOCIATES,
INC., ET AL

## RULING ON PLAINTIFF'S AND THIRD-PARTY PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on cross motions for summary judgment. Plaintiff De Lage Landen Financial Services ("DeLage") has filed a motion for summary judgment (doc. 88) to which KeyBank National Association ("Keybank") and Jones Lang LaSalle Americas, Inc. ("JLLA") (collectively, "Intervenors") filed an opposition (doc. 93). Keybank and JLLA filed a motion for summary judgment (doc. 89) to which DeLage filed an opposition (doc. 94). There is no need for oral argument. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated here in the Court DENIES both motions (docs. 88 and 89).

## Background

I. Facts

This case arises out of the alleged failure of Defendants to pay Plaintiff DeLage for the construction an integrated security and informational System ("the System") for the Perkins Rowe Development ("the Development"), a mixed residential, retail and entertainment complex (doc. 88, ex. F).

1

The following facts are undisputed. On July 21, 2006, Defendants Perkins Rowe and Perkins Rowe Associates II, LLC, executed a mortgage ("the Mortgage") with KeyBank (doc. 88, ex. D). Under the terms of the Mortgage, Keybank retained a security interest in "[a]ll buildings, structures, component parts, other constructions and improvements now located on or later to be constructed on the premises" (*Id.*). The Mortgage was recorded with the Clerk of Court and Recorder of Mortgages of East Baton Rouge Parish on July 21, 2006 (doc. 1, ex. D).

On October 3, 2007, Perkins Rowe executed a master lease agreement ("the Lease") with Cisco Systems Capital Corporation ("Cisco") for the System (doc. 88, ex. A). On November 20, 2007, a UCC-1 Financing Statement was filed and recorded covering the collateral described in the Lease, including the System's equipment (*Id.*, ex. D). On or about December 11, 2007, Cisco assigned its rights under the Lease to DeLage, at which point DeLage began acquiring equipment, software and services necessary to complete and operate the System (*Id.*, ex. B).

The System was to be installed for the purpose of controlling the Development's security, fire safety, lighting, music, etc., from a central location (*Id.*, ex. G). The System is comprised of individual units which are bolted to large black racks which are themselves bolted to the floors of various buildings in the Development (*Id.*, ex. F). The units' wires run throughout the walls and ceilings of the Development's buildings and through underground conduits in between

2

buildings (doc. 93, ex. D). Removing the system would require unbolting the units from the racks and pulling the wires from the holes through which they were connected to the individual units (doc. 88, ex. H). If the System were to be removed, the security, fire safety, lighting, music, etc., would continue to function, but could not be centrally controlled (*Id.*, ex. F). In addition, questions remain as to how much damage would result from removing the system.[1]

## II. Procedural History

On November 19, 2009, DeLage filed suit against Defendants to recover the almost $1.5 million due under the October-2007 Lease (doc. 1). In its complaint, DeLage seeks to enforce its alleged security interest in the System under the Lease (doc. 1). On April 20, 2010, Keybank and JLLA intervened to protect their alleged security interest in the Development under the Mortgage. KeyBank asserts that the System is a component part of the Development, subject to the July-2006 Mortgage, and that its security interest is superior to DeLage's security interest under the Lease, which was perfected no earlier than October 2007 (doc. 28).

On January 20, 2011, DeLage filed its Motion (doc. 88) for Summary Judgment. DeLage asserts that its security interest under the Lease is superior

---

[1] Plaintiffs claim that removing the System would result in no "damage" other than exposing the holes where the units were bolted to the racks or the racks to the floor and exposing the holes where the wires connected to the individual units (doc. 88, ex. H). Intervenors claim that (1) it is impossible to tell what wires are related to the System—and could be removed—and which are not; and (2) removing the System may also damage these other wires (doc. 93, ex. D). However, because there are no "as built" drawings of the Development, Intervenors are not certain whether these "other" wires even exist and state that an electrician will need to be hired to determine their presence and/or location (doc. 83, ex. D).

to Intervenors security interest under the Mortgage because the System is not a component part of the Development, and is therefore not covered by the Mortgage (doc. 88).

On January 20, 2011, Intervenors filed their Motion (doc. 89) for Summary Judgment. Intervenors assert that (1) DLL's lease is not valid; (2) DLL's security interest under the lease is invalid because DLL failed to file a fixture filing; and (3) even if DeLage's lease is valid and its security interest is perfected, Intervenors' security interest is superior because the Mortgage encumbering the Development was filed before the Lease, and the System is a component part of the Development (doc. 89).

## Standard of Review

A motion for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). If the dispositive issue is one on which the nonmovant will bear the burden of proof at trial, the moving party satisfies its burden by pointing out that there is insufficient proof concerning an essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant has the burden of proof at trial, it must demonstrate the absence of material facts and entitlement to judgment as a matter of law. *Id.* at 321. If the movant does so, the burden

shifts to the nonmovant to show, by affidavit or otherwise, that a genuine issue of material fact remains for the factfinder to resolve. *Id.* at 323.

## Discussion

Intervenors assert that the System is a component part of the Development, and is covered by their July-2006 Mortgage (docs. 89 & 93). Intervenors assert that they have a security interest in the System that is superior to DeLage's, which would have arisen in October 2007, at the earliest (doc. 89). Plaintiff asserts that Intervenors' Mortgage does not cover the System, because the System is not a component part of the development (docs. 88 & 94).

Under Louisiana Law, an encumbrance on an immovable, such as a mortgage, includes the immovable's component parts. La. Civ. Code art. 469. Under Louisiana Law, "[t]hings incorporated into a tract of land, a building, or other construction, so as to become an integral part of it, such as building materials, are its component parts." La. Civ. Code. art. 465. "Incorporation is a question of fact to be determined by the trier of facts." La. Civ. Code art. 465. There are two tests for determining whether a particular thing is a component part  La. Civ. Code. art. 466. Under first test, "[t]hings that are attached to a building and that, according to prevailing usages, serve to complete a building of the same general type, without regard to its specific use, are its component parts." La. Civ. Code. art. 466. Under the second test, things are component parts if "they are attached to such a degree that they cannot be removed without substantial damage to themselves or to the building or other construction." La. Civ. Code.

art. 466. The United States Court of Appeals for the Fifth Circuit has stated that items such as "central heating and air conditioning, . . . built-in public address and alarm systems, . . . interior, physically attached light fixtures, exterior lighting, . . . and like electrical equipment" are component parts under Louisiana Law. *Equibank v. U.S. I.R.S.*, 749 F.2d 1176, 1179 (5th Cir. 1985).

The Court finds that there are genuine issues of material fact. KeyBank's Mortgage granted a security interest in the debtor's "Property" which was defined as including the buildings comprising the Development and their component parts (doc. 89, ex. D). The processes that the System centrally controlled can still be controlled without the System in place, however, Keybank has introduced evidence suggesting that doing so would be inappropriate and likely impracticable, especially with regards to lighting and fire safety (*Id.*, ex. E, p. 21; ex. G, p. 16). That is, the evidence suggests that such a System "completes" a large mixed-use complex "under prevailing usages." The Court finds that this testimony creates genuine issues of material fact as to whether the System is a component part under Louisiana Civil Code article 466.

The Court also finds that there are genuine issues of material fact as to whether removing the System would cause substantial damage to the System itself or the Development. Plaintiff states that removing the system would require nothing more than unbolting the individual units and pulling the wires from the ceilings, walls and conduits through which they run. According to Plaintiffs, the only "damage" that will occur is that the holes into which the units were bolted

and through which the wires ran will be exposed (doc. 88, ex. H). Intervenors claim that (1) it is impossible to tell what wires are related to the System—and could be removed—and which are not; and (2) removing the System may also damage these other wires (doc. 93, ex. D). Because there are no "as built" drawings of where the various wires are located, Intervenors are not certain whether these "other" wires even exist and state that an electrician will need to be hired to determine their presence and/or location (doc. 83, ex. D).

Because resolution of both parties' motions require the Court to determine whether the System is a component part of the Development, the Court will DENY both Motions (docs. 88 and 89) for Summary Judgment.

## Conclusion

Accordingly, the Court hereby DENIES Plaintiff DeLage's Motion (doc. 88) and Third-Party Plaintiffs KeyBank and JLLA's Motion (doc. 89) for Summary Judgment.

Signed in Baton Rouge, Louisiana, on this 6th day of April, 2011.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**