UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DE LAGE LANDEN FINANCIAL
SERVICES, INC.

VERSUS

PERKINS ROWE ASSOCIATES,
INC., ET AL

CIVIL ACTION

NO. 09-990-JJB-SCR

### RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Plaintiff De Lage Landen Financial Services, Inc.'s ("DLL") Motion (doc. 98) for Summary Judgment. Defendants Perkins Rowe Associates, L.L.C. ("PRA"), JTS Realty Services, L.L.C. ("JTS"), Echelon Construction Services, L.L.C. ("ETS"), and Joseph T. Spinosa ("Spinosa") (collectively "Perkins Rowe") have filed an opposition (doc. 105) to which DLL has filed a reply (doc. 109). There is no need for oral argument. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated herein the Court GRANTS Plaintiff's motion.

### Background

**I. Facts**

This case arises out of the alleged failure of Perkins Rowe to pay DLL according to the terms of the parties' agreement. The following facts are undisputed.

On October 3, 2007, Perkins Rowe executed a Master Lease Agreement ("the Lease") with Cisco Systems Capital Corporation ("Cisco"). Under the

1

Lease, Cisco was to install and lease to Perkins Rowe software and equipment ("the System") necessary for Perkins Rowe to centrally control the security, lighting, music, etc., for the development it was constructing (doc. 98, ex. A). The Lease required Perkins Rowe to make payments to Cisco in accordance with Schedules and Progress Payments Addenda incorporated into the Lease (doc. 98, ex. A).[1] On or about December 11, 2007, Cisco assigned its rights under the Lease to DLL, at which point DLL began expending funds necessary to complete and operate the System (doc. 98, ex. C).

Cisco and DLL also took steps to secure their interests and guarantee payment. On November 20, 2007, Cisco filed and recorded a UCC-1 Financing Statement covering the collateral described in the Lease (doc. 98, ex. B). On November 13, 2009, Cisco filed a UCC-3 Amendment stating that it had assigned its interest in the collateral under the Lease to DLL (doc. 98, ex. D). In addition, on November 15, 2007, each of the individual Defendants executed a Corporate Guaranty ("Guaranty") unconditionally guaranteeing payment and performance of all of Perkins Rowe's obligations under the Lease (doc. 98, ex. E).[2] Spinosa

---

[1] According to the Lease, if Perkins Rowe failed to make required Progress Rent Payments, then Perkins Rowe was immediately responsible for the total cost advanced by Cisco for equipment, goods, software and services, together with interest, attorneys fees and other costs set forth in the Lease (doc. 98, ex. A, § 5).

[2] The Guaranty states:
> *Guarantor hereby unconditionally guarantees* to [Cisco/DLL] and its successors and assigns (i) the due and punctual payment to [Cisco/DLL] when due of *all rent obligations and all other amounts coming due under the Lease*, including, without limitation, *all indemnification payments*, whether as a result of acceleration, maturity or otherwise, (ii) *the full, prompt and unconditional performance of every obligation* to be performed by [Perkins Rowe] under the Lease, and (iii) *all expenses of obtaining or endeavoring to obtain payment or performance thereof or*

signed an addendum to the Guaranty limiting his liability to the lesser of fifty percent of the obligations owing and due or $1,000,000.00 (doc. 98, ex. E).

During the installation of the system, DLL spent over $1.3 million on equipment, software and services (doc. 98, ex. F). However, Perkins Rowe failed to make any of the payments required by the Lease.

## II. Procedural History

On November 19, 2009, DLL filed suit against Perkins Rowe to recover the funds it spent on the System and to enforce its security interest (doc. 1). On February 17, 2010, Perkins Rowe answered the complaint and asserted counterclaims against DLL (doc. 8). Perkins Rowe asserts that DLL caused Perkins Rowe to default because DLL (1) selected contractors whom it knew could not timely install the equipment; (2) improperly notified the contractors to cease performing installations; and (3) did not notify Perkins Rowe that it had been assigned Cisco rights under the Lease (doc. 96).

On March 28, 2011, DLL filed its Motion (doc. 98) for Summary Judgment. DLL asserts that Perkins Rowe's counterclaim is foreclosed by the terms of the Lease. Moreover, DLL asserts that there are no genuine issues of material fact as to Perkins Rowe's breach of the Lease, the individual Defendants' liability as guarantors, or the validity of its security interest.

---

*security therefore, or of enforcing this Guaranty, including attorneys' fees and other legal expenses.* If more than one entity executes this Guaranty, *the liability of each such Guarantor hereunder shall be joint and several.*

(doc. 98, ex. E) (emphasis added).

On April 18, Perkins Rowe filed its motion in opposition (doc. 105). Perkins Rowe asserts that there are genuine issues of material fact as to (1) whether Defendants may be held liable despite that DLL told its contractors to stop working; (2) the extent to which Spinosa agreed to guarantee payment and performance of Perkins Rowe's obligations under the Lease; and (3) whether DLL has a valid security interest in the System. On May 3, 2011, DLL filed its reply (doc. 109). DLL asserts that the factual disputes cited by Perkins Rowe are nonexistent or immaterial.

## **Standard of Review**

A motion for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). If the dispositive issue is one on which the nonmovant will bear the burden of proof at trial, the moving party satisfies its burden by pointing out that there is insufficient proof concerning an essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the issue is one in which the movant bears the burden of proof at trial, the movant must demonstrate the absence of material facts and entitlement to judgment as a matter of law. *Id.* at 321. If the movant does so, in order to survive the motion for summary judgment, the nonmovant must show that a genuine issue of material fact remains for the factfinder to resolve. *Id.* at 323. In either case, the court must

construe all facts in the light most favorable to the non-movant and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "genuine issue of material fact" exists only when a reasonable fact-finder could return a verdict in the non-movant's favor. *Id.* at 248. In considering a motion for summary judgment in a contractual dispute, "the interpretation of an unambiguous contract is a matter of law," and a district court may properly grant summary judgment if a contract is unambiguous. *S. Natural Gas Co. v. Pursue Energy*, 781 F.2d 1079, 1081 (1986).

## Discussion

### I. Plaintiff's Claims

#### A. Defendants' breach

Plaintiff asserts that it was entitled under the Lease to instruct its contractors to cease working when Perkins Rowe defaulted (doc. 98). Defendants assert that Plaintiff violated the Lease by failing to pay the contractors and, as a result, they did not receive a completed System as required by the Lease (doc. 105).

"[C]ourts are bound to give legal effect to all legal agreements according to the true intent of the parties, and that the intent is to be determined by the words of the contract when these words are clear and explicit and lead to no absurd consequences." *U.S. v. Warren Bros.*, 365 F. Supp. 528, 530 (M.D. La. 1973). As such, an unambiguous contract's terms form the law governing the dispute

and a court construing the contract may properly grant summary judgment. *S. Natural Gas Co.*, 781 F.2d at 1081; *Warren Bros.*, 365 F. Supp. at 530.

The Court finds that there are no genuine issues of material fact. The Lease required Perkins Rowe to make periodic payments to Cisco/DLL in accordance with Schedules and Progress Payments Addenda incorporated into the Lease (doc. 98, ex. A). Moreover, according to the Lease, if Perkins Rowe failed to make a payment, Cisco/DLL could hold Perkins Rowe immediately responsible for the total cost that Cisco/DLL advanced for equipment, software and services, together with interest and attorneys fees (doc. 98, ex. A, § 5).

The Court also finds that Plaintiff is entitled to judgment as a matter of law. Because the Lease is unambiguous, its terms form the law governing the dispute. *Warren Bros.*, 365 F. Supp. at 530. The Lease defines Perkins Rowe's failure to make lease payments as a default (doc. 96, ex. A, § 13). Under the Lease, DLL was entitled to terminate any and all obligations to Perkins Rowe—including its obligation to continue funding the installation of the System—in the event that Perkins Rowe defaulted and failed to cure its default within ten days (doc. 96, ex. A, § 14). It is undisputed that Perkins Rowe failed to make required lease payments and failed to cure within ten days. Therefore, the Court finds that entry of summary judgment in Plaintiff's favor is appropriate. *S. Natural Gas Co.*, 781 F.2d at 1081.

**B. The Guaranty**

DLL asserts that it is entitled to enforce its rights under the Lease against the individual Defendants because each executed the Guaranty (doc. 98). Defendants assert that genuine issues of material fact exist regarding the extent to which Spinosa agreed to guarantee Perkins Rowe's obligations (doc. 105).

Generally speaking, Louisiana courts uphold the parties' choice-of-law provision unless it violates a strong public policy of the State. *Curtis Callais Welding, Inc. v. Stolt Comex Seaway Holdings, Inc.*, 129 F. App'x 45, 52 (5th Cir. 2005). Here, the Guaranty is governed by New York law. In order to recover a guaranty under New York law, the plaintiff must prove (1) the underlying obligation; (2) the guaranty; and (3) the prime obligor's default in payment on the underlying obligation. *Superior v. Fidelity Assurance, Ltd. v. Schwartz*, 69 A.D.3d 924, 925-26 (N.Y. App. Div., 2010). In addition, the guaranty must be in writing and executed by the party making the guaranty. *Schulman v. Westchester Mech. Contractors, Inc.*, 56 A.D.2d 625, 625 (N.Y. App. Div., 1977).

The Court finds that there are no genuine issues of material fact. The Guaranty is in writing, and was signed by each of the individual Defendants, including Spinosa (doc. 98, ex. E). It states:

> Guarantor hereby *unconditionally guarantees* to [Cisco/DLL] . . . (i) . . . *payment* to [Cisco/DLL] when due of all rent obligations and *all other amounts coming due under the Lease, including*, without limitation, all *indemnification* payments . . . (ii) . . . unconditional *performance of every obligation* to be performed by [Perkins Rowe] under the Lease, and (iii) all expenses of . . . endeavoring to obtain payment or performance thereof or security therefore, or of enforcing this

7

> Guaranty, including attorneys' fees and other legal expenses. If more than one entity executes this Guaranty, the *liability of each such Guarantor hereunder shall be joint and several*.

(doc. 98, ex. E) (emphasis added). The Guaranty goes on to state that each guarantor's liability is "unlimited in amount" and that "[t]he obligations of Guarantor hereunder shall be absolute and unconditional" (doc. 98, ex. E, § 2). Section 8.1 of the Guaranty, entitles DLL to declare immediately payable the entire amount due and owing from the individual Defendants, with the exception of Spinosa (*Id.*). Spinosa's liability under the Guaranty is limited by an Addendum, which states that "[his] obligations . . . shall be limited to (i) the lesser of fifty percent (50%) of all the Obligations or one million dollars ($1,000,000.00)" (doc. 98, ex. E).

The Court also finds that Plaintiff is entitled to judgment as a matter of law. DLL has proven all the necessary elements of an enforceable guaranty: (1) the underlying obligation; (2) the guaranty; and (3) the prime obligor's default in payment on the underlying obligation. *Superior*, 69 A.D.3d at 925-26. Here, Perkins Rowe was obligated to pay DLL in accordance with schedules in the Lease for the equipment used in the System (doc. 98, ex. A). In addition, the individual Defendants agreed to unconditionally guaranty—and be jointly and severally liable for— "all rent obligations and all other amounts coming due under the Lease," "unconditional performance of every obligation to be performed by [Perkins Rowe] under the Lease," and "all expenses of . . . enforcing [the]

Guaranty" (doc. 98, ex. E). Finally, Plaintiff has established that Perkins Rowe failed to make payments in accordance with the Lease's provisions. Therefore, the Court finds that summary judgment in Plaintiff's favor is appropriate.

### C. Plaintiff's security interest

Plaintiff asserts that it has a valid security interest because its predecessor, Cisco, filed a UCC-1 Financing Statement identifying it as the secured party, Defendants as debtors, and covering the collateral described in the Lease (doc. 98). Thereafter, Cisco executed a UCC-3 Amendment transferring its security interest to Plaintiff. Defendants assert that there are genuine issues of material fact regarding whether Plaintiff's security interest has priority over those of Intervenors KeyBank National Association ("KeyBank") and Jones LaSalle America ("JLA") (doc. 105).

Under Louisiana Revised Statute 10:9-301(2), "while collateral is located in a jurisdiction, the local law of that jurisdiction governs perfection." Under Louisiana law, a lessor may acquire a security interest by filing a UCC-1 Financing Statement that (1) provides the name of the debtor; (2) provides the name of the secured party . . . ; and (3) indicates the collateral covered by the financing statement. La. R. S. § 10:9-502(a). In addition, the secured party can transfer to another party its interest in the collateral by filing a UCC-3 Amendment. La. R. S. § 10:9-514.

The Court finds that there are no genuine issues of material fact. Prior to assigning its rights to DLL, on November 20, 2007, Cisco filed and recorded in

9

East Baton Rouge Parish a UCC-1 Financing Statement covering the collateral described in the Lease, including the System's equipment (doc. 98, ex. B). The Financing Statement recognizes Defendants as debtors and Cisco as the secured party (doc. 98, ex. B). On November 13, 2009, Cisco filed a UCC-3 Amendment in East Baton Rouge Parish stating that it had assigned its interest in the collateral under the Lease to DLL (doc. 98, ex. D). Though the priority of DLL's security interest was previously in dispute, on April 28, 2011, the Court entered a consent order and dismissed KeyBank's and JLA's claims against DLL (doc. 108).

The Court also finds that DLL is entitled to judgment as a matter of law. Cisco's November 20, 2007 Financing Statement complied with the requirements of Louisiana Revised Statute 10:9-502(a). It provided the names of the debtor and secured party, Perkins Rowe and Cisco, respectively, and described the equipment and software comprising the System as the collateral. In addition, Cisco validly transferred its interest in the collateral under Louisiana Revised Statute § 10:9-514. Cisco filed a UCC-3 Amendment naming it as the secured party and DLL as the assignee, and providing the mailing address for each party. Therefore, Plaintiff has a valid security interest in the collateral described in the Lease and summary judgment in its favor is appropriate.

## II. Defendants' Counterclaims

### A. DLL's selection of contractors

Plaintiff asserts that the Lease prevents Perkins Rowe from bringing a claim due to Plaintiff's selection of contractors (doc. 96). Perkins Rowe did not oppose Plaintiff's claim (doc. 105).

The Court finds that there are no genuine issues of material fact. The Lease contains the following provisions: (1) "Lessee's obligation to pay all lease payments shall be absolute, unconditional and is not subject to any abatement, set-off, defense or counter-claim for any reason whatsoever" (doc. 96, ex. A, § 2); (2) "Lessee has made the selection of [the] equipment, software and support services based upon its own judgment and expressly disclaims any reliance on statements made by Lessor" (doc. 96, ex. A, § 4); (3) "If a System is not properly installed . . . Lessee shall make any claim on account thereof solely against the applicable Supplier(s) . . . and shall not set up against Lessee's obligations any such claims as a defense, counterclaim, set-off or otherwise" (*Id.*); and (4) "Regardless of cause, Lessee will not assert any claim whatsoever against Lessor for loss of anticipatory profits or any other indirect special or consequential damages" (*Id.*).

The Court also finds that Plaintiff is entitled to Judgment as a matter of law. The Lease's terms form the law governing the parties' dispute. *Warren Bros.*, 365 F. Supp. at 530. Here, the Lease contains at least four provisions which foreclose Perkins Rowe's claim against DLL (*see* doc. 96, ex. A, §§ 2, 4). Because the Lease is unambiguous, the Court finds that entry of summary judgment in Plaintiff's favor is appropriate. *S. Natural Gas Co.*, 781 F.2d at 1081.

**B. DLL's instruction to contractors to stop working**

Plaintiff asserts that the Lease entitled it to notify its contractors to cease work in the event that Perkins Rowe defaulted (doc. 96). Perkins Rowe did not oppose Plaintiff's claim (doc. 105).

The Court finds that there are no genuine issues of material fact. The Lease states that "[u]pon the occurrence of any Event of Default, Lessor may . . . terminate or cause the termination of . . . any or all Support or other services provided under or in connection with the Software or Equipment . . . and may terminate the Lessee's right to use any or all of the Software, Equipment, and/or Support" (doc. 96, ex. A, § 14). According to the Lease, an "Event of Default" occurs when the Lessee "fails to make any Lease Payment, or any other payment, as it becomes due and such failure is not cured within 10 days" (*Id.*, § 13). In fact, Perkins Rowe failed to make required lease payments and failed to cure its failures within ten days (*Id.*).

The Court also finds that Plaintiff is entitled to judgment as a matter of law. The Lease's terms form the law governing the parties' dispute. *Warren Bros.*, 365 F. Supp. at 530. Under the Lease, DLL was entitled to terminate any and all obligations to Perkins Rowe in the event that Perkins Rowe defaulted and failed to cure its default within ten days (doc. 96, ex. A, § 14). Under the Lease, Perkins Rowe's failure to make lease payments and failure to cure within ten days constitutes a default which entitled DLL to terminate its obligations to Perkins Rowe (doc. 96, ex. A, § 13). Because the Lease is unambiguous, the

Court finds that entry of summary judgment in Plaintiff's favor is appropriate. *S. Natural Gas Co.*, 781 F.2d at 1081.

### C. DLL's failure to notify Perkins Rowe of the assignment from Cisco

DLL asserts that it had no obligation to notify Perkins Rowe that it had been assigned Cisco's rights under the Lease (doc. 96). Perkins Rowe did not oppose Plaintiff's claim (doc. 105).

The Court finds that there are no genuine issues of material fact. The Lease states:

> *Lessor may at any time assign to any person or entity ("Assignee") all or part of any interest in this Agreement or any Lease . . . and Lessor may grant security interests in such system*, subject to Lessee's rights therein. In such events, all the provisions of this Agreement or any lease hereunder for the benefit of Lessor shall inure to the benefit of Assignee. . . . The rights of Assignee to the payment of the assigned Lease Payments and other Lease payments . . . shall not be subject to any defense, counterclaim, or set-off which Lessee may have or assert against Lessor and Lessee hereby agrees that it will not assert any such defenses, set-offs, counterclaims and claims against the Assignee.

(doc. 96, ex. A, § 7) (emphasis added).

The Court also finds that Plaintiff is entitled to Judgment as a matter of law. The Lease's terms form the law governing the parties' dispute. *Warren Bros.*, 365 F. Supp. at 530. Nowhere does the Lease require that DLL notify Perkins Rowe of an assignment. Moreover, under the Lease, "the rights of the Assignee [DLL] to the payment of the assigned Lease Payments and other lease Payments . . . shall not be subject to any defense, counterclaim, or set-off which Lessee

may have or assert against Lessor" (doc. 96, ex. A, § 7).  Because the Lease is unambiguous, the Court finds that entry of summary judgment in Plaintiff's favor is appropriate.  *S. Natural Gas Co.*, 781 F.2d at 1081.

## **Conclusion**

Accordingly, the Court hereby GRANTS Plaintiff's Motion (doc. 98) for Summary Judgment.  The parties are instructed to contact the Court to set the briefing schedule on the issue of damages.

Signed in Baton Rouge, Louisiana this 11th day of May, 2011.

     JUDGE JAMES J. BRADY
    UNITED STATES DISTRICT COURT
    MIDDLE DISTRICT OF LOUISIANA